IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 6, 2015

**STATE OF TENNESSEE v. CRAIG MICHAEL BARBEE**

**Appeal from the Circuit Court for Crockett County**
**No. 4326      Clayburn L. Peeples, Judge**

_____

**No. W2014-00835-CCA-R3-CD  -  Filed May 1, 2015**

_____

The defendant, Craig Michael Barbee, was convicted of attempted second degree murder, especially aggravated robbery, two counts of aggravated robbery, employing a firearm during the commission of a dangerous felony, and two counts of aggravated assault, which were merged with the aggravated robbery convictions. He received an effective sentence of 106 years. On appeal, the defendant argues that the trial court erred by not granting his motion for change of venue and in sentencing. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and ROGER A. PAGE, JJ., joined.

Tom W. Crider, District Public Defender; J. Daniel Rogers (on appeal) and Jamie Berkley (at trial), Assistant Public Defenders, for the Defendant-Appellant, Craig Michael Barbee.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Garry G. Brown, District Attorney General; and Hillary L. Parham, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

**FACTS**

The defendant's convictions resulted from his robbery of a Dollar General Store in Friendship, Tennessee, during which he shot and seriously wounded the chief of police. Since the defendant is not contesting the sufficiency of the evidence, we will review it in a narrative fashion.

During the evening of May 18, 2012, the defendant entered the store and asked a clerk, Shay Olonda Nicole Palmer, about head scarves. He left without making a purchase. She recognized him when later, wearing a mask, he returned and began yelling and cursing at her, wanting the key to the safe. She responded that only the manager had the key. Pointing a pistol at Ms. Palmer, he grabbed her arm and pushed her to the back of the store. On the way, they encountered Chief Bill Garrett, of the Friendship Police Department, who was in civilian clothes and shopping in the store with his wife at the time. Chief Garrett told his wife the store was being robbed and she should leave immediately. Also, he broadcast a call on his radio that the store was being robbed. The defendant repeatedly hit Chief Garrett in the back of the head as he forced the two hostages toward the rear of the store. As they entered the back storage room, they encountered Chief Garrett's wife and Angela Lumley, the assistant manager, who were hiding behind some boxes. Unsuccessful in obtaining the key to the safe, the defendant took cell phones from Chief Garrett and his wife, stomping them after tossing them on the floor. He next took the money which they were carrying and demanded Chief Garrett's wallet. As the defendant saw Chief Garrett's badge in the wallet, Chief Garrett grabbed for the defendant's pistol and was shot in the stomach by the defendant. The defendant then took the remaining hostages to the front of the store, removed money from the cash register, and ran out the door. As he passed a black Suburban SUV, he threw his jewelry, gloves, and mask into it and fled. The defendant was chased and subdued by two officers, who recovered from him a .38 caliber revolver. The defendant waived his Miranda rights and made a written statement admitting that he had robbed the Dollar General Store and shot Chief Garrett. The defendant did not testify or otherwise present proof at the trial.

## ANALYSIS

We will review the issues presented on appeal by the defendant.

### I. Change of Venue

The Tennessee Rules of Criminal Procedure provide that a trial court may grant a change of venue "when a fair trial is unlikely because of undue excitement against the defendant in the county where the offense was committed or for any other cause." Tenn. R. Crim. P. 21(a). Whether to grant a motion for change of venue is left to the sound discretion of the trial court, and the court's ruling will be reversed on appeal only upon a

clear showing of an abuse of that discretion. <u>State v. Davidson</u>, 121 S.W.3d 600, 611-12 (Tenn. 2003). The mere fact that jurors have been exposed to pretrial publicity will not warrant a change of venue. <u>State v. Mann</u>, 959 S.W.2d 503, 531-32 (Tenn. 1997). For this court to reverse a conviction based on a venue issue, the "defendant must demonstrate that the jurors who actually sat were biased or prejudiced against him." <u>State v. Evans</u>, 838 S.W.2d 185, 192 (Tenn. 1992).

The defendant's motion for change of venue set out the following bases for the request:

1. The Defendant believes that it is unlikely that he can receive a fair trial in this county due to the undue excitement and media publicity commencing at the date of the alleged crime and continuing thereafter. The media outlets within this jurisdiction have carried multiple stories purporting to relate facts surrounding the various counts alleged in the Indictment. Said outlets have a general circulation which extends throughout the county and into the homes of most prospective jurors. Said publicity transcends the normal amount of newspaper comment concerning the Defendant and the charges pending against him.

2. The local television station, WBBJ, has broadcast multiple stories regarding this case since May of 2012 including but not limited to the injuries sustained by Friendship Police Chief Bill Garrett, quotes regarding the facts of the case, quotes from the Defendant's statement to police, and quotes from Friendship Police Chief Bill Garrett regarding the desired punishment of Defendant.

3. Other media outlets, including WMCT out of Memphis, Tennessee; WREG out of Memphis, Tennessee; State Gazette out of Dyersburg, Tennessee; the Jackson Sun out of Jackson, Tennessee; and the Commercial Appeal in Memphis, Tennessee; have likewise carried news reports at various hours of the day and have sent stories concerning this Defendant into practically every home in this county.

4. Publicity in this case transcends the normal amount of newspaper comment concerning the Defendant and the charges pending against him

3

due to the fact that an officer, Friendship Police Chief Bill Garrett, was injured during the commission of the alleged crime. There has been tremendous community support and outreach to Friendship Police Chief Bill Garrett, which has also received media coverage.

5. Defendant submits that the area from which the venire is drawn is much smaller and more concentrated than other areas. Crockett County is, with regard to population, . . . one of the smallest counties in Tennessee. (Crockett County is approximately the 19th smallest county in Tennessee with regard to population.)

6. Due to the publicity in this case, Friendship Police Chief Bill Garrett being a well-known person in the Crockett County community, and the size of Crockett County, there is a strong likelihood that potential jurors from another venire would have much less knowledge of and much less exposure to the facts and publicity surrounding this case.

Attached as exhibits to the motion were approximately thirty pages of various types of news reports and comments regarding the incident. Apparently, the defendant did not seek a pretrial hearing on this motion; and the record does not include an order of the court denying the motion. At the beginning of the trial, as prospective jurors had been seated, the court questioned them as a group and, then, individually, regarding their knowledge of the incident.[2] To those who had some familiarity with the incident, the court then questioned each further regarding whether the prospective juror had formed an opinion as to the guilt or innocence of the defendant and, if so, whether the opinion could be set aside. As we understand the transcript of the voir dire examination of the jurors, of the twelve selected, three had heard nothing of the matter; another three had heard of it but recalled nothing of it; and another juror had heard of the matter but could recall little about it. All of those selected said they could be fair, and the trial proceeded. In his motion for a new trial, the defendant listed as an issue the denial of his change of venue request. However, there was no elaboration of this assignment, and it was not raised in oral argument on the motion.

_____

[2]The prospective jurors were not questioned, either by the trial court or the defendant, as to their exposure to or knowledge of the specific articles which were the bases for the motion for change of venue.

4

Based upon the record, we cannot conclude that the trial court abused its discretion in not granting the motion for change of venue. The record does not show that the prospective jurors had knowledge of the particular news articles relied upon by the defendant's motion, and there is no basis for our concluding that they could not do as they said, which was to set aside any knowledge of the matter and make their decision based upon the evidence at trial. Accordingly, this assignment is without merit.

## II. Sentencing

The defendant also argues on appeal that the court erred in imposing the maximum sentences for each conviction and ordering that they be served consecutively. The State disagrees, as do we.

The trial court is granted broad discretion to impose a sentence anywhere within the applicable range, regardless of the presence or absence of enhancement or mitigating factors, and "sentences should be upheld so long as the statutory purposes and principles, along with any enhancement and mitigating factors, have been properly addressed." State v. Bise, 380 S.W.3d 682, 706 (Tenn. 2012). Accordingly, we review a trial court's sentencing determinations under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. In State v. Caudle, our supreme court clarified that the "abuse of discretion standard, accompanied by a presumption of reasonableness, applies to within-range sentences that reflect a decision based upon the purposes and principles of sentencing, including the questions related to probation or any other alternative sentence." 388 S.W.3d 273, 278-79 (Tenn. 2012).

Sentences were imposed on the defendant for his convictions in Counts 1-5 of the indictment. His convictions and sentences were, as to Count 1, 20 years at 35% as a multiple offender for the attempted second degree murder of Bill Garrett; as to Count 2, 40 years at 100% as a multiple violent offender for the especially aggravated robbery of Bill Garrett; as to Count 3, 20 years at 100% as a multiple offender for the aggravated robbery of Shay Palmer; as to Count 4, 20 years at 100% for the aggravated robbery of Daphne Garrett; and as to Count 5, 6 years at 100% as a career multiple offender for the employing a firearm during the commission of a dangerous felony. All of these sentences were ordered to be served consecutively. The State is correct in pointing out that each sentence is within the range available for the defendant. As to the sentencing, the defendant argues that it was excessive because he was sentenced to serve, "for a

5

single episode of armed robbery which included a non-fatal shooting[] more than twice the sentence many defendants receive for a conviction of first-degree murder."

According to the presentence report, the defendant has a very lengthy record of arrests and convictions, his first as an adult being in 1992, at age 18, when he was sentenced to two years for the felony unauthorized use of a motor vehicle. This conviction was followed, over the next eighteen years, by what appear to be at least nine felony convictions, including convictions for robbery with a deadly weapon in 1993, at age 19, and robbery without a deadly weapon in 1999, at age 26. It appears that the defendant has spent most of his adult life either in prison or awaiting disposition of charges for new crimes committed following his most recent release from custody. Possibly because the defendant had spent so much time imprisoned, he reported "no employment history."

In imposing consecutive sentences, the trial court explained why the defendant was a professional criminal and a dangerous offender:

> That brings up the question as to whether any or some or all of these charges should be run consecutively. It's my understanding and I'm looking at the law as I speak, I have to find that the Defendant is a professional criminal who has knowingly devoted his life to criminal acts as a major source of livelihood. I do find that.
>
> I find further that the Defendant is an offender whose record of criminal activity is extensive.
>
> I find that the Defendant is a dangerous offender who has little hesitation about committing crime in which the risk to human life is high.
>
> Therefore, I find that the need for public safety demands that he be sentenced as an offender with consecutive sentences.

The trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that one or more of the seven factors listed in Tennessee Code Annotated section 40-35-115(b) apply, including that the defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high. Tenn. Code Ann. § 40-35-115(b)(4). As to consecutive sentencing, our standard of review is abuse of discretion with a presumption of reasonableness. State v. Pollard, 432 S.W.3d 851 (Tenn. 2013).

6

This defendant's record speaks for itself. His very lengthy record of prior convictions, including those for crimes of violence, coupled with the dangerous episode in this matter, compels us to agree with the trial court that the defendant is dangerous, does not hesitate to engage in violent behavior, and lengthy incarceration is necessary to protect the public.

## CONCLUSION

Based on the foregoing authorities and reasoning, the judgments of the trial court are affirmed.

_____
ALAN E. GLENN, JUDGE